UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARRY D. IRVIS,

                                     Plaintiff,

       vs.

                                   9:09-CV-543

GREG SEALLY, et al.,                         (GLS/ATB)

                                    Defendants.

_____

BARRY D. IRVIS, Plaintiff Pro Se
JONATHAN M. BERNSTEIN, Goldberg, Segalla Law Firm, for County Defendants
MEGAN M. BROWN, Asst. Attorney General, for State Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter was referred by U.S. District Judge Gary L. Sharpe, for Report and

Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

The case was transferred to me on January 4, 2010, following the retirement of U.S.

Magistrate Judge Gustave J. Di Bianco.  (Dkt. No. 53).

     Plaintiff filed this civil rights complaint, pursuant to 42 U.S.C. § 1983,

regarding incidents that occurred during his incarceration at Greene County Jail

("Greene").[1]  Robert Cuttita and Deborah Clark ("State Defendants") filed a motion to

dismiss plaintiff's complaint ("State Defendants' Motion") on September 14, 2009.

(Dkt. No. 14).  Plaintiff filed a response to the State Defendants' Motion on October 1,

_____

[1] Plaintiff is currently in the custody of the New York State Department of Correctional
Services ("DOCS").

2009.  (Dkt. No. 36).  Defendants Hulbiki, Donna Juliano, Carol D. Stevens, Greg

Seally, Michael Spitz, Kenneth Liese, Edward Voorhees[2], and Ed Warga ("County

Defendants") filed a motion to dismiss plaintiff's complaint ("County Defendants'

Motion") on October 21, 2009.  (Dkt. No. 39).  Plaintiff filed a response to the County

Defendants' Motion on December 7, 2009 with an accompanying memorandum of

law.  (Dkt. Nos. 46, 47).  The county defendants and the state defendants filed

separate replies, on December 21 and 23, 2009, respectively.  (Dkt. Nos. 50, 52).

Plaintiff filed a sur-reply on February 8, 2010.  (Dkt. No. 58).

## DISCUSSION

I.   **Facts**

Plaintiff divides the section of his complaint entitled "Facts" according to the

claims he asserts and the date he associates with those claims.[3]  He claims that, during

a strip search in December 2006, Beojekian[4] grabbed plaintiff's penis.  (Compl. p. 6).

On February 2, 2007, Beojekian had plaintiff bend at the waist during a strip search,

"spread [plaintiff's] butt cheeks and coughed 3 times [w]hile [Beojekian] was rubbing

---

[2] The court will use the spelling of this defendant's name "Voorhees," as indicated on his acknowledgment of service (Dkt. No. 22).

[3] Plaintiff does not number the paragraphs or pages in his complaint, so the court will refer to material by citing to the page number assigned by the Case Management/Electronic Case Files system ("CM/ECF").

[4] The court notes that this named defendant has not been served, and therefore is not yet a party in this action.  In addition, the spelling of this defendant's name is "Beojekian," not "Beo Jenkins," as it is spelled in the complaint.  The court will refer to this defendant as "Beojekian."

his crotch." (Compl. p. 4). On June 8, 2007, Beojekian was performing another strip search of plaintiff and "grabbed [plaintiff's naked butt cheek while stroking [Beojekian's] exposed penis with his other hand." (Compl. p. 5).

On August 25, 2007, during a strip search, Beojekian offered plaintiff cigarettes if plaintiff would show Beojekian his erect penis, and Beojekian told plaintiff that he would "satisfy [plaintiff] better than any woman could and began to describe his oral sex techni[que]." (Compl. p. 5). Plaintiff filed a grievance on the same date, and Beojekian then told plaintiff that he was a "nigger and around here niggers end up dead" and that he "could easily kill my nigger children" if plaintiff continued to "write him up." (Compl. p. 5, Pl.'s Aff. in Opp. ¶ 14).

Plaintiff made county defendants Hussey,[5] Schnur, Rivenburg, Liese, Warga and state defendants Cuttita and Clark[6] aware of defendant Beojekian's behavior; but they allegedly "refused to investigate him" until fall 2007, when "a caucasian inmate complained to his family and they could afford a lawyer." (Compl. p. 6). Plaintiff alleges that his grievances were ignored because of his race. (Compl. p. 10).

On the same day in December 2006 that he was first allegedly abused by Beojekian, plaintiff requested "legal reference material not found in facility law

---

[5] Plaintiff also spells this defendant's name "Hussy" in different places throughout his complaint, but the court will only spell it "Hussey."

[6] Defendants Cuttita and Clark are two employees from the New York State Commission of Correction.

3

library" and defendants Hussey, Schnur, Rivenburg, Liese, and Voorhees allegedly refused plaintiff's request.  (Compl. p. 6).  On July 19, 2007, plaintiff alleges that defendants Hussey, Schnur, Rivenburg, Liese "did something to [plaintiff's] notice of intention" that plaintiff had put in the Greene County Jail mailbox, addressed to the Attorney General.  (Compl. p. 9).  Plaintiff claims that, after he had been transferred to state prison, he determined that his notice of intention had not made it to its destination, when he learned that his claim was being dismissed.  (Compl. p. 9).

On November 19, 2007, plaintiff "once again requested 11 legal cases not in [the] facility law library" from defendants Hussey, Schnur, Rivenburg, Liese, and Voorhees.[7]  (Compl. p. 6).  Plaintiff further alleges that defendants Seally and Spitz "hinder[ed] [plaintiff] from properly preparing for [plaintiff's] criminal case by refusing to furnish him with cases[,] laws[,] and legal motions . . . thus had [plaintiff] plea[d] guilty to charges [he] did not fully understand [and plaintiff] was unable to exercise [his] right to trial because [he] was unable to properly prepare."  (Compl. p. 7).

Plaintiff alleges that he was denied legal calls to the public defender "on a daily basis[,]" from October 5, 2006, to August 15, 2008.  (Compl. p. 6).  By June 12, 2008,

---

[7] Apparently, Richard Hussey is the former Sheriff of Green County, Al Schnur was a lieutenant at Greene County Jail, and Don Rivenburg was a sergeant at Greene County Jail, and Kenneth Liese, and Edward Voorhees are currently sergeants at Greene County Jail.  Plaintiff does not make clear exactly from whom he requested the materials, or if he requested the materials from all the people mentioned, which seems unlikely.

plaintiff had written fifty-seven grievances that defendant Warga had failed to "investigate, answer, or address." (Compl. p. 8).

Between October 9, 2006, and January 17, 2008, plaintiff alleges that defendants Hulbiki and Juliano "refused to properly treat medical diagnoses . . . refused to see [plaintiff,] put him on a diet[,] and starved [him, while not] inform[ing him] of the possible side effects of the depression medication [plaintiff] was on due to [Beojekian's] homosexual behavior." (Compl. p. 8). Plaintiff alleges that defendants Hulbiki and Juliano did this because of his race, and because they knew the victim in his criminal case. (Compl. p. 10). Plaintiff claims that as a result, he was "hungry, weak, nauseous [sic][,] suffered from severe headaches everyday [sic] for months [and] gained 55 lbs.[8] of water weight due to medication." (Compl. p. 8). Plaintiff claims he was taking medication for depression to help him "cope with what [Beojekian] did to [plaintiff]," but that the "water weight" caused plaintiff to get "severe stretch marks on [his] stomach, arms, and chest." (Compl. p. 10–11). The medication also "cause[d] [plaintiff] to get man boobs[,] which [led] to my girlfriend of 4 years to leave [him] and be insure [sic] of [plaintiff's] body." (Compl. p. 11).

## II.   <u>Causes of Action</u>

Plaintiff makes fourteen claims, distinguished by date and the defendants he alleges are involved. Plaintiff asserts his first three claims against defendants

---

[8] Plaintiff also claims that he gained 57 lbs., but it appears to be a simple mathematical error and does not affect the court's analysis of the issue.

Beojekian, Hussey, Schnur, and Rivenburg for the inappropriate touching that occurred during the strip searches conducted on February 2, June 8, and August 25, 2007.[9]  (Compl. pp. 4–5).  Plaintiff asserts his fourth claim against defendants Beojekian, Hussey, Schnur, and Rivenburg for the racial comments and threats that occurred on August 25, 2007.[10]  (Compl. p. 5).  Plaintiff asserts his fifth claim against defendants Hussey, Schnur, Rivenburg, Liese, Warga, Cuttita, and Clark for their alleged failure to investigate plaintiff's grievances and complaints related to the alleged harassment that occurred on February 2, June 8, and August 24, 2007. (Compl. p. 6).

Plaintiff asserts his sixth and seventh claims against defendants Hussey, Schnur, Rivenburg, Liese, and Voorhees[11] for allegedly refusing plaintiff's request on January 9 and November 19, 2007, for legal material not located in the facility law library.

---

[9]As described above in the facts, Beojekian is the only person involved in the alleged touching.  The court assumes that plaintiff lists the other individuals in an attempt to establish supervisory liability based on their knowledge of Beojekian's history.  *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986) (supervisory liability can be established if (1) that official directly participated in the infraction; (2) after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (4) he or she was grossly negligent in managing subordinates who caused the unlawful condition or event). Because the court is recommending dismissal on the merits of plaintiff's claims, no analysis of personal involvement is necessary.

[10] Although plaintiff's cause of action is not clear, it appears as if Beojekian was the person who actually made the threats, and plaintiff lists the other people in an attempt to establish supervisory liability based on their knowledge of Beojekian's history.  *See* note 9, *supra*, and accompanying text.

[11] Again, it is not clear who plaintiff alleges refused his request for legal materials.

6

(Compl. p. 6–7).  Plaintiff asserts his eighth claim against defendants Seally and Spitz for hindering plaintiff from properly preparing a defense in his criminal case by denying him "cases[,] laws[,] and legal motions," causing plaintiff to plead guilty to charges he did not "fully understand," therefore preventing plaintiff from exercising his "right to trial."  (Compl. p. 7).

Plaintiff asserts his ninth claim against defendants Hussey, Seally, Schnur, Spitz, Liese, Voorhees, Warga, and Rivenburg[12] for allegedly denying plaintiff legal calls to the public defender on a daily basis.  (Compl. p. 7).  Plaintiff also claims that the "Sgt." stated that he would call plaintiff's lawyer for him only if plaintiff would tell the sergeant the information plaintiff wished to relay.  (Compl. p. 7).  Plaintiff asserts his tenth claim against defendant Warga for allegedly failing to "investigate, answer, or address" any of plaintiff's 57 grievances.  (Compl. p. 8).

Plaintiff asserts his eleventh claim against defendants Hulbiki and Juliano for refusing to treat plaintiff's medical problems, putting him on a diet and starving him, and for not informing him of the possible side effects of the antidepressants he was taking.  (Compl. p. 8).  Plaintiff asserts his twelfth cause of action against defendants Seally, Spitz, Liese, Voorhees, Cuttita, and Clark for failing to investigate plaintiff's claims.  (Comp. p. 8–9).  Plaintiff asserts his thirteenth cause of action against

---

[12] It is not clear who plaintiff alleges refused his request to speak with his public defender on a daily basis, or if plaintiff is alleging that all of them (presumably at different times) denied his request.

defendants Hussey, Schnur, Rivenburg, and Liese[13] for "doing something with [plaintiff's] notice of intention that caused plaintiff's claim filed with the New York State Court of Claims to be dismissed. (Compl. p. 9).  Plaintiff asserts his fourteenth claim against defendants Seally, Stevens, Spitz, Liese, Voorhees, and Varga for trying to cover up the alleged misconduct by claiming that no records exist in response to Plaintiff's Freedom of Information Law[14] ("FOIL") request.  (Compl. p. 9).

Plaintiff seeks injunctive relief,[15] in addition to significant compensatory and punitive damages.  Presently before the court are the County Defendants' Motion[16] and the State Defendants' Motion to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The court recommends that defendants' motions be granted and plaintiff's claim be dismissed for the reasons discussed below.

---

[13] Plaintiff does not make clear which person he alleges actually tampered with his mail. *See supra* note 9 and accompanying text.

[14] N.Y. Pub. Off. Law § 84 *et seq*. (Consol. 2010).

[15] Plaintiff seeks injunctive relief for each of his claims, but because he is no longer being held at Greene County Jail, his claims for injunctive relief are moot. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (plaintiff's transfer moots his claims related to his conditions of confinement claims); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (plaintiff's transfer moots claims for injunctive relief).

[16] Plaintiff has failed to serve Hussey, Rivenburg, and Beojekian, who therefore are not participating in the motions to dismiss.  Failure to serve these defendants could be grounds for dismissal pursuant to Fed. R. Civ. P. 4(m), but because the court is recommending dismissal of plaintiff's complaint for failure to state a claim, it also recommends dismissing the complaint as to the unserved defendants for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii). This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia*, the action fails to state a claim on which relief can be granted.

### III.   <u>Motion to Dismiss—Legal Standards</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits, and any statements or documents incorporated into the complaint by reference.[17] *Rothman v. Gregor*, 220 F.3d 81, 88

---

[17] Plaintiff has attempted to file additional exhibits consisting of statements from other former inmates of Greene County Jail in support of his claims. (Dkt. No. 59). This court has reviewed the exhibits, but does not find it necessary to consider them in its analysis. Plaintiff's exhibits are statements by other inmates that allegedly corroborate the allegations made in the

(2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the motion to one for summary judgment).

## IV.  **Harassment**

Plaintiff's first three causes of action are based on the alleged inappropriate touching that occurred on February 2, June 8, and August 24, 2007.  The Eighth Amendment protects an inmate from the "unnecessary and wanton infliction of pain." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting *Whitely v. Albers*, 475 U.S. 312, 319 (1986)).  In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie*, 105 F.3d at 861.  The plaintiff in *Boddie* was also claiming an Eighth Amendment violation based upon allegations of sexual abuse.  *Id.*  The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions.  But they do not involve a harm

---

complaint.  In a motion pursuant to Rule 12(b)(6), the court assumes plaintiff's allegations are true, thus the court need not consider additional statements in support of the claims.  Moreover, plaintiff already attached numerous documents to his complaint that the court will consider in its analysis.

of federal constitutional proportions . . . ." *Id*.

In this case, plaintiff alleges that defendant Beojekian three times conducted an strip frisk that rose to the level of sexual harassment. Pursuant to *Boddie*, allegations such as those made by plaintiff do not rise to the level of constitutional violations regardless of the impropriety of the action.[18] *Id*. Thus, plaintiff's claims based on sexual harassment should be dismissed.

Plaintiff's fourth cause of action is based on alleged racial slurs and threats made on August 25, 2007. However, verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and, therefore, is not actionable under . . . § 1983." *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper). Plaintiff in this case did not assert, nor does the record support, any allegations of physical injury related to the verbal harassment, however inappropriate

---

[18] The court notes that numerous courts have held that allegations of sexual abuse during frisk searches do not implicate the Eighth Amendment. *See Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correction officer grabbed inmate's penis during pat frisk insufficient); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment, especially when inmate did not allege physical injury); *Williams v. Keane*, No. 95 Civ. 379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

it might of been.  Even accepting plaintiff's allegations as true, this court finds that plaintiff has failed to state a claim, and his fourth cause of action based on verbal harassment should be dismissed.

## V.   Grievances and Investigations

Plaintiff's fifth, tenth, and twelfth causes of action pertain to grievances and defendants' alleged failure to respond or investigate them.  The law is well-settled that inmates do not have a constitutional right to grievance procedures.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Davis v. Buffardi*, No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted).  Furthermore, a violation of the inmate grievance procedures does not give rise to a claim under section 1983.  *Cancel v. Goord*, No. 00 CIV. 2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

To the extent that plaintiff attempts to assert a separate constitutional claim of "failure to investigate," the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.  *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (citing *Nieves v. Gonzalez*, No. 05 Civ. 17, 2006 U.S. Dist. LEXIS 24302, *11–13 (W.D.N.Y. Mar. 2, 2006); *Longi v. County of Suffolk*, No. CV-02-5821, 2008 U.S. Dist. LEXIS 25468, *22–23 (E.D.N.Y. Mar. 27, 2008)).  In order for a constitutional violation to have occurred, the investigation *itself* must have resulted in a deprivation of a constitutional right.  *Faison v. Hash*,

03-CV-6475P, 2004 U.S. Dist. LEXIS 29151 at *6, 2004 WL 944523 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York*, 1996 U.S. Dist. LEXIS 16417 at *6, 1996 WL 648927 (S.D.N.Y. Nov. 7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved)).

First, contrary to plaintiff's allegations that defendants failed to investigate, Beojekian's Arrest Report,[19] submitted as Exhibit C to Plaintiff's Affidavit in Opposition (Dkt. No. 47), indicates that an investigation was conducted and mentions that Aaron Beojekian "had numerous allegations regarding sexual misconduct with the inmates." (Pl.'s Aff. in Opp. Ex. C). Plaintiff also mentions, in his grievance dated July 28, 2008, that he thinks officers are "retaliating because of the jail[']s investigation into my complaints." (Compl. Ex. E-1-A). In any event, plaintiff had no constitutional right to any investigation of his grievances. Accordingly, plaintiff's claims based on the alleged failure to investigate his grievances may be dismissed for failure to state a constitutional claim.

---

[19] Beojekian was arrested on January 10, 2008, and the report indicates that the reason for the request were the allegations of sexual misconduct by Beojekian involving inmates at the Greene County Jail.

## VI.   <u>Mail Tampering and Access to Courts</u>

Plaintiff alleges that his access to the courts was hindered due to the alleged inadequacy of the law library at the Greene County Jail.  Plaintiff also claims that he was not permitted to contact his public defender as much as he would have liked, and defendants "did something" to his notice of intention related to a claim plaintiff filed in the New York Court of Claims.

In order to establish a claim that a prisoner's right of access to the courts has been violated, actual injury must be shown.  *See Lewis v. Casey*, 518 U.S. 343, 351–52.  Inmates' right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis v. Casey*, 518 U.S. 343, 351–54 (1996).  To establish a violation, "the inmate . . . must . . . demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351.  The same standard applies when an inmate claims that his legal mail has been obstructed.  *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  Plaintiff must allege that the defendants' actions hindered the prisoner's "efforts to pursue a legal claim."  *Id.* (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d. Cir. 1997).

Prior to the Supreme Court's decision in *Lewis*, the Second Circuit had held that "an isolated instance" of interference with an inmate's legal mail delivery was insufficient to state a First Amendment claim, either with respect to the mail itself or with respect to access to courts, where "the infraction was not in accordance with

14

official policy or practice and where no showing had been made that the inmate's right to access to courts was chilled . . . ." *Washington v. James*, 782 F.2d 1134, 1139 (2d. Cir. 1986) (citation omitted).  *Lewis* also suggests that the actual harm must be to direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement.  518 U.S. at 355.  "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'"  *Davis v. Goord*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

Plaintiff attempts to claim that defendants' failure to get him legal materials somehow influenced his guilty plea, and that the failure to allow plaintiff to call his public defender on a "daily basis" also adversely affected his criminal case.[20]  (Compl. p. 7).  It is clear from plaintiff's own statements that he was represented by counsel the entire time he was at the Greene County Jail.  (Pl.'s Aff. in Opp. ¶¶ 32, 34, 40).  Court-appointed counsel satisfies a prisoner's right of access to the courts.  *See Boudon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004).  Plaintiff apparently did not like his first public defender and states that he "intended on representing himself at trial due to his public defender not having plaintiff's best interest[s] in mind."  (Pl.'s Aff. in Opp. ¶¶ 32, 33, 37).  However, a new public defender was appointed "who took time to explain, [and] showed plaintiff case law and statu[t]es."  (Pl.'s Aff. in Opp. ¶

---

[20] Plaintiff states in his Memorandum of Law attached to his Affidavit in Opposition (Dkt. No. 47) that "plantiff would have pled guilty a year and a half earlier if he would have been able to receive requested material . . . [and] plaintiff's original public defender had refused to help plaintiff understand the law . . . ."  (Pl.'s Mem. of L. p. 12).

40).  Plaintiff states that he was satisfied with his attorney's advice and ultimately pled guilty.  (Pl.'s Mem. of L. in Opp. p. 11).  Therefore, plaintiff's right of access to the courts was not abridged in any way by defendants' actions, even assuming that plaintiff's allegations are true.  Accordingly, plaintiff's claims related to the alleged deficiencies in the quality of the law library, the lack of access to legal materials, and his limited access to his public defender should be dismissed.

Plaintiff's allegations, relating to the case he filed in the New York State Court of Claims are slightly different.  He alleges that defendants somehow interfered with mail that plaintiff sent to the court.  However, plaintiff only alleges one incident where he claims defendants interfered with his legal mail.  In attempt to establish actual injury, plaintiff claims that the alleged mail tampering was the reason the Court of Claims dismissed his case.  (Pl.'s Aff. in Opp. ¶ 66).  However, the Court of Claims Order of Dismissal states that plaintiff's claim was filed on June 25, 2008, and by Order to Show Cause returnable January 14, 2009, the Court of Claims ordered plaintiff to submit a written statement, showing that the claim had been properly served on the Attorney General of New York State.  (Pl.'s Ex. F-5-A).  Apparently, although the Court of Claims had received plaintiff's documents, the Attorney General had not.  *Id.*  Plaintiff responded with a letter and numerous attachments, but did not address the issue of service, nor does it appear that he attempted to send the Attorney General another copy of the claim.  *Id.*  Because plaintiff failed to provide proof of service of the claim, and did not comply with the Court of Claims' Order, his claim was dismissed.  *Id.*

16

Taking plaintiff's allegations as true, even if defendants had tampered with plaintiff's mail, preventing proper service of his claim on the New York State Attorney General, the Court of Claims gave plaintiff ample time to correct the problem.  Plaintiff failed to do so, and his claim was dismissed.  Plaintiff's case was *not* dismissed due to defendants' alleged conduct, as evidenced by plaintiff's response (however inadequate) to the Court of Claims' Order to Show Cause.  Dismissal of his action was caused by plaintiff's failure to comply with the Court of Claims' Order, not any alleged mail tampering by defendants.  Accordingly, plaintiff's access to courts claim based on mail tampering should be dismissed.

## VIII.  Medical Indifference

Plaintiff claims that Doctor Hulbiki and Nurse Juliano were deliberately indifferent to his medical needs because they did not treat him appropriately.

### A.    Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280.  The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)).  If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)).  However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.*  If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185).

### 2.     Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.*  Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844.  Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional*

*Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.  *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.  *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate.  *Id.  See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence not actionable under § 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### B.    Application

Plaintiff takes issue with defendants' decision to put him on a diet to treat his sleep apnea, and plaintiff alleges the reduced-calorie diet "starved" him.  (Pl.'s Mem of L. p. 15).  Despite the diet to treat his sleep apnea, plaintiff states that he gained 57 pounds, going from 225 pounds when he was arrested on October 5, 2006, to 282 pounds when he was transferred to Downstate Correctional Facility on August 12, 2008.  (Pl.'s Aff. in Opp. ¶ 53).  Plaintiff attributes his weight gain to "water weight from medication not food."  *Id.*  Plaintiff alleges that because defendants Hulbiki and

Juliano failed to inform him of the side effects of the antidepressants he was taking and prescribe a "water pill," he became "more depressed, [and had] suicidal thoughts." (Compl. pp. 10–11).

Plaintiff attached two notes to his complaint, one signed by defendant Juliano and one signed by defendant Hulbiki.  Defendant Juliano writes:

> Inmate Irvis has repeatedly request[ed] to see the Doctor in order to be removed from a low fat diet.  Inmate Irvis has been informed repeatedly [that] he is on a low calorie, low fat diet in order to ↓ his weight and in effect ↓ his symptoms of sleep apnea and daytime narcolepsie [sic].  It is in his best interest to continue the prescribed diet.  The Doctor has denied Inmate Irvis['] request on several occasions.  Further discussions [of] this matter [are] unwarranted.

Defendant Hulbiki writes:

> Inmate Irvis has been asking since he got here for a regular diet[,] but he has obstructive sleep apnea[,] which is due to being overweight.  This means he stops breathing at night[,] which causes him to wake up to breath[e] (most of the time imperceptible to the person) (he doesn't know when this happens).  Weight loss is [a] key treatment for this condition[,] which can lead to high blood pressure, daily fatigue and even heart disease and death.  This has been explained in detail multiple times to [the] Inmate.  Diet should not change.

Taking plaintiff's allegations as true, even assuming that he had a serious medical need, it is clear that plaintiff simply disagreed with Doctor Hulbiki and Nurse Juliano about his treatment.  Mere disagreement with prescribed treatment does not rise to the level of a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d at 31.  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  *Id.*

(citations omitted).  An inmate does not have the right to treatment of his choice.
*Dean v. Coughlin*, 804 F.2d at 215.  The fact that plaintiff might have preferred an
alternative treatment, or believes that he did not get the medical attention he desired,
does not rise to the level of a constitutional violation.  *Id.*

Plaintiff claims that the defendants failed to inform him of the side effects of his
antidepressant medication.  Even assuming that plaintiff's statements are true, at
worst, plaintiff is alleging negligence in defendants' care.  As stated above,
negligence, even to the point of malpractice, is insufficient to rise to the level of a
constitutional violation.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*,
151 F. Supp. 2d at 312.  Accordingly, plaintiff's claim based on defendants' deliberate
indifference to his serious medical need should be dismissed.

## IX.   <u>FOIL Request</u>

Plaintiff complains about the response (or lack thereof) to his second FOIL
request, in which he sought Greene County Jail employee "records that pertain to
complaints filed against said employees by peers and inmates."  (Pl.'s Ex. G-1).
Plaintiff's undated request was forwarded to the Greene County Attorney, who
informed him by letter dated February 5, 2009, that her office was the "designated
recipient" for all FOIL requests, and that his request would be processed immediately.
(Pl.'s Ex. G-2).  Plaintiff claims that defendants are "trying to cover up the
[defendants'] misconduct" because the FOIL response dated February 23, 2009 stated
that "the County of Greene, it's [sic] agencies or departments have no documents that
are responsive to your request as set forth herein above [sic]."  (Pl.'s Ex. G-3).

22

Plaintiff "has no property interest in obtaining FOIL documents." *Lawrence v. Antonucci*, No. 04-CV-356, 2006 U.S. Dist. LEXIS 38777, at *9, 2005 WL 643457 (W.D.N.Y. March 16, 2005) (citing *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 432–33 (S.D.N.Y. 2004); *Webb v. Ashburn*, No. 96-Civ-325, 1997 U.S. Dist. LEXIS 2848, 1997 WL 118355, at *6 (S.D.N.Y. Mar. 17, 1997); *Billups v. Millet*, No. 91-Civ-6326, 1996 U.S. Dist. LEXIS 2645, 1996 WL 99399, at *4 (S.D.N.Y. Mar. 6, 1996)).  Furthermore, the "defendants' failure to provide the requested [FOIL] documents does not amount to a constitutional violation." *Blount v. Brown*, No. 10-CV-1548, 2010 U.S. Dist. LEXIS 47406, at *6, 2010 WL 1945858 (E.D.N.Y. May 11, 2010) (citing *Simpson v. Town of Southampton*, No. 06-CV-6743, 2007 U.S. Dist LEXIS 43649, 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007).  Plaintiff has failed to establish any constitutional violation, and his claim based on defendants' response to his FOIL request should be dismissed.

## IX.   **Qualified Immunity**

Defendants argue that they are entitled to qualified immunity, which protects government officials when performing their discretionary functions when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Defendants here did not violate a constitutional right, so the court need not address qualified immunity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that state defendants' motion to dismiss (Dkt. No. 14) be

23

**GRANTED**, and it is further

**RECOMMENDED**, that county defendants' motion to dismiss (Dkt. No. 39) be **GRANTED**, and plaintiff's claim be **DISMISSED IN ITS ENTIRETY** as to all defendants**.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated:** September 2, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge